UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KISSINGER N. SIBANDA<br><br>*Plaintiff,*<br><br>v.<br><br>DAVID ELLISON, DAVID BENIOFF, BILLY RAY, DARREN LEMKE, SKYDANCE PRODUCTIONS, LLC, a California Limited Company; and GEMINI PICTURES, LLC, a California Limited Liability Company, ASHLEE LIN, FOSUN PICTURES INC.<br><br>*Defendants.* | **CIVIL ACTION NO. 23-CV-05752 (JMF)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

# TABLE OF CONTENTS

Page

DEEP ISSUE………………………………………………………………………….7

PRELIMINARY STATEMENT…………………………….7

FACTUAL BACKGROUND…………………………………7

    **A.**    Plaintiffs' Businesses, Copyrighted Works And Intellectual Property
    **B.**    Defendants' Infringing Activities

        **1.**    Defendants Commonly Own And Control "Gemini Man"……………..8

        ARGUMENT…………………8

**I.** PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING DEFENDANTS' ILLEGAL ACTS

    **A.**    Plaintiff Is Likely To Succeed On The Merits Of Their Claims……………….9

        **1.**    Plaintiff Is Likely To Prevail On His Direct Copyright Infringement Claim……………………………………….9
        **2.**    Plaintiff Is Likely To Prevail On Their Contributory Copyright Infringement Claim……………………………….9

    **B.**    Plaintiff Has No Adequate Remedy At Law And Defendants' Public Performance, Distribution And Steaming of "Gemini Man," Irreparably Harms Plaintiffs……………………………………………………………10

    **C.**    The Balance of Hardships and Public Interest Favor an Injunction………….10

**II.** THE PRELIMINARY INJUNCTION ORDER SHOULD DIRECT DEFENDANTS TO TRANSFER MONEY INTO A CONSTRUCTIVE TRUST………………………………………………………………………15

**III.** PLAINTIFF IS ENTITLED TO AN ORDER PREVENTING THE FRAUDULENT TRANSFER OF ASSETS………………………………………………………………16

**IV.** PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY………………………..16

    CONCLUSION………………18

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Adolph Coors Co. v. A. Genderson & Sons, Inc.*,
    486 F. Supp. 131 (D. Colo. 1980) ........................................................................................... 15

*Advanced Access Content System Licensing Adminstrator, LLC v. Shen*,
    No. 14-cv-1112 (VSB) (S.D.N.Y. Mar. 4, 2014) ................................................................... 15

*ALS Scan, Inc. v. RemarQ Cmtys., Inc.*,
    239 F.3d 619 (4th Cir. 2001) ................................................................................................. 16

*Am. Broad. Companies, Inc. v. Aereo, Inc.*,
    134 S. Ct. 2498, 189 L. Ed. 2d 476 (2014) ....................................................................... 9, 10

*Animale Grp. Inc. v. Sunny's Perfume Inc.*,
    256 F. App'x 707 (5th Cir. 2007) .......................................................................................... 18

*Apple Computer, Inc. v. Franklin Computer Corp.*,
    714 F.2d 1240 (3d Cir. 1983). ............................................................................................... 17

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010). ................................................................................................. 11

*Arista Records, LLC v. Tkach*,
    No. 15-cv-3701 (AKN) (S.D.N.Y. June 3, 2015) .................................................................. 18

*Belstaff Group SA v. Doe*,
    No. 15-cv-2242 (S.D.N.Y. Apr. 8, 2015) .............................................................................. 21

*Broad. Music, Inc. v. Hearst/ABC Viacom Entm't Servs.*,
    746 F. Supp. 320 (S.D.N.Y. 1990). ................................................................................. 10, 12

*Capitol Records, LLC v. BlueBeat, Inc.*,
    765 F. Supp. 2d 1198 (C.D. Cal. 2010) ................................................................................. 11

*Columbia Pictures Indus., Inc. v. Fung*,
    710 F.3d 1020 (9th Cir. 2013) ............................................................................................... 12

*Corning Glass Works v. Jeannette Glass Co.*,
    308 F. Supp. 1321 (S.D.N.Y. 1970), *aff'd*, 432 F.2d 784 (2d Cir. 1970) ............................... 19

*Datatech Enters. LLC v. FF Magnat Ltd.*,

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
   806 F.2d 392 (2d Cir. 1986). ...................................................................................................15

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)..................................................................................................................8

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*,
   696 F. Supp. 2d 368 (S.D.N.Y. 2010) .....................................................................................15

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
   443 F.2d 1159 (2d Cir. 1971). ...........................................................................................11, 13

*Getty Images (U.S.), Inc. v. Microsoft Corp.*,
   No. 14CV7114 DLC, 2014 WL 6633032 (S.D.N.Y. Nov. 24, 2014).....................................10

*Gucci Am., Inc. v. Weixing Li*,
   768 F.3d 122 (2d Cir. 2014). ...................................................................................................23

*Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*,
   780 F.2d 189 (2d Cir. 1985). .....................................................................................................8

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) .................................................................................................17

*Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*,
   51 F.3d 982 (11th Cir. 1995) .............................................................................................15, 17

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
   378 F. Supp. 2d 448 (S.D.N.Y. 2005).....................................................................................14

*Matthew Bender & Co. v. W. Pub. Co.*,
   158 F.3d 693 (2d Cir. 1998). ...................................................................................................11

*Maverick Recording Co. v. Goldshteyn*,
   2006 WL 2166870 (E.D.N.Y. July 31, 2006).........................................................................11

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*,
   312 F.3d 94 (2d Cir. 2002). .....................................................................................................16

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)................................................................................................................14

*Microsoft Corp. v. Jun Yan*,
   No. 10-cv-00162, 2010 U.S. Dist. LEXIS 14933 (D. Conn. Feb. 18, 2010)..........................15

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*,
   704 F. Supp. 2d 305 (S.D.N.Y. 2010).................................................................................17, 18

*Nat'l Ass'n of Broads. v. Copyright Royalty Tribunal*,
    809 F.2d 172 (2d Cir. 1986). .................................................................................................. 10

*The Nat'l Football League v. Chen*,
    No. 11-Civ-0344 (WHP) (S.D.N.Y. Jan. 19, 2011) ................................................................. 17

*NFL v. PrimeTime 24 Joint Venture*,
    211 F.3d 10 (2d Cir. 2000). ................................................................................................ 9, 10

*The North Face Apparel Corp. v. Fujian Sharing Import & Export Ltd.*,
    10-Civ-1630 (AKH) (S.D.N.Y.) ..................................................................................... 14, 16

*Omega Importing Corp. v. Petri-Kine Camera Co.*,
    451 F.2d 1190 (2d Cir. 1971). ................................................................................................ 17

*Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*,
    816 F.2d 68 (2d Cir. 1987). .................................................................................................... 15

*Otokoyama Co. v. Wine of Japan Import, Inc.*,
    175 F.3d 266 (2d Cir. 1999). .................................................................................................. 14

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ................................................................................................ 13

*Playboy Enters., Inc. v. Frena*,
    839 F. Supp. 1552 (M.D. Fla. 1993) ....................................................................................... 16

*Power Test Petroleum Distribs., Inc. v. Calcu Gas, Inc.*,
    754 F.2d 91 (2d Cir. 1985). .................................................................................................... 17

*Reebok Int'l Ltd. v. Marnatech Enter.*,
    737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd* 970 F.2d 552 (9th Cir. 1992) ............................... 18

*Reebok Int'l Ltd. v. Marnatech Enter.*,
    970 F.2d 552 (9th Cir. 1992) .................................................................................................. 18

*Richemont Int'l SA v. Chen*,
    No. 12-cv-6689 (S.D.N.Y. Sept. 4, 2012). .............................................................................. 18

*Richemont Int'l SA v. Xiao*,
    No. 13-cv-9071 (S.D.N.Y. Dec. 23, 2013) ............................................................................. 15

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010). ................................................................................. 8, 16, 17, 18

*Shell Oil Co. v. Commercial Petroleum, Inc.*,
    928 F.2d 104 (4th Cir. 1991) .................................................................................................. 15

*Showtime Networks, Inc. v. Doe 1*,
   No. 15-cv-03147 (April 30, 2015) ................................................................................ 16, 17

*Tecnimed SRL v. Kidz-Med, Inc.*,
   763 F. Supp. 2d 395 (S.D.N.Y. 2011) .................................................................................. 16

*Twentieth Century Fox Film Corp. v. Mow Trading Corp.*,
   749 F. Supp. 473 (S.D.N.Y. 1990). ....................................................................................... 16

*U.S. Polo Assoc. v. PRL USA Holdings, Inc.*,
   800 F. Supp. 2d 515 (S.D.N.Y. 2011) .................................................................................. 16

*Universal Studios v. Corley*,
   273 F.3d 429 (2d Cir. 2001). ................................................................................................. 10

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   676 F.3d 19 (2d Cir. 2012). ................................................................................................... 12

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
   192 F. Supp. 2d 321 (D.N.J. 2002), *aff'd*, 342 F.3d 191 (3d Cir. 2003) ...................... 9, 10, 15

*Warner Bros. Entm't, Inc. v. WTV Sys.*,
   824 F. Supp. 2d 1003 (C.D. Cal. 2011) ............................................................................. 9, 17

*Warner Bros. Ent., Inc. v. Doe*,
   No. 14-cv-3492 (KPF) (S.D.N.Y. May 29, 2014) .................................................................. 22

*WPIX, Inc. v. ivi, Inc.*,
   691 F.3d 275 (2d Cir. 2012). ...................................................................................... 9, 17, 16

**Statutes**

15 U.S.C.
   § 1114(1) ................................................................................................................................ 14
   § 1114(1)(a) ............................................................................................................................. 1
   § 1116(a) ............................................................................................................................... 15
   § 1117. ................................................................................................................................... 15
   § 1125. ................................................................................................................................... 15
   § 1125(a) ................................................................................................................................. 1

17 U.S.C.
   § 106(3)–(5) ......................................................................................................................... 8, 9
   § 106(4) ................................................................................................................................. 10
   § 106(5) ................................................................................................................................. 10
   § 501. .............................................................................................................................. 1, 8, 9
   § 502. ..................................................................................................................................... 15
   § 504(b) ................................................................................................................................. 18

28 U.S.C.
  § 1651. ............................................................................................................................ 16

**Rules**

Fed. R. Civ. P. 65(d)(2)………………………………………………………………..*passum*

Plaintiff submits this Memorandum of Law in support of his motion for preliminary injunction against Defendants for copyright infringement under the Copyright Act, 17 U.S.C. § 502, 15 U.S.C § 1116(a), and Federal Rule of Civil Procedure 65(d)(2),

## DEEP ISSUE

Should defendants be allowed to continue to infringe plaintiff's copyright with no equitable remedy?

## PRELIMINARY STATEMENT

Defendants through their continued streaming and sells of "Gemnin Man," including dvds and blue rays continue to infringement on plaintiff's copyright and contribute to its infringement.

Plaintiff requests a preliminary injunction, setting aside a sum certain, 5 million which would render plaintiff whole should he succeed in this matter as a preliminary injunction; if this court is inclined with the arguments presented here, plaintiff requests that the preliminary injunction order all distribution of "Gemini Man," to cease forthwith until this matter is resolved on the merits.

The second request is a high bar, and thus plaintiff is requesting that the preliminary injunction issue to instruct defendants to set aside a constructive trust at a minimum, as the least equitable remedy, until the court has resolved the merits of this matter in the sum of $5 million. A reasonable figure given that the "writers," on "Gemini Man," each received $3 million dollars.

Defendants continued flagrant and unauthorized exploitation of Plaintiff's copyrighted work is causing—and without an injunction as requested herein, will continue to cause— irreparable harm to Plaintiffs.

## FACTUAL BACKGROUND

**C.     Plaintiffs' Businesses, Copyrighted Works And Intellectual Property**

Plaintiff is an attorney and science fiction writer. He authored the "The Return To Gibraltar," in in 2011.

### D. Defendants' Infringing Activities

Defendants, through their movie, "Gemini Man," infringed plaintiff's work "The Return To Gibraltar," they continue to reap residual and streaming rights from their infringement. Defendants also sell DVD and Blue Rays of "Gemini Man" through various outlets online and in physical stores. Defendants have not shown any remorse or interest in any negotiated conflict resolution, but instead argue that plaintiff's lawsuit is inherently "frivolous," due to Section 411 of the Copyright Act's preregistration requirement for U.S. nationals; that plaintiff is generally engaged in 'sanctionable" behavior as an inherent pattern and advice the court to speedily rule in their favor, in order to save 'judicial resources.' (sic). Doc. No. 126.

### 2. Defendants Commonly Own And Control Gemini Man

The Defendants commonly own and exploit the film, "Gemini Man" and its residual income. To date the movie has grossed $169, 598, 362. Exhibit: 1. Defendants will continue to earn income for the foreseeable future on the movie and the residual income is not capped in terms of possible future years. Plaintiff is excluded form any earnings from this film despite its apparent copyright infringement.

## ARGUMENT

### V. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION ENJOINING DEFENDANTS' ILLEGAL ACTS

To obtain a preliminary injunction, a plaintiff must establish that: (i) it is likely to succeed on the merits; (ii) it is likely to suffer irreparable harm in the absence of preliminary relief; (iii) the balance of equities tips in its favor; and (iv) an injunction is in the public interest.

*Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010).

Accordingly, plaintiff can proceed in seeking a preliminary injunction while motions are pending, to maintain the *status quo* and protect any award of damages from being wasted as retaliatory revenge by defendants. *Id*.

> A. **Plaintiff Is Likely To Succeed On The Merits Of Their Claims**
>
> 1. **Plaintiff Is Likely To Prevail On His Direct Copyright Infringement Claim**

Plaintiff is likely to succeed on their copyright infringement claims. To prevail on their direct copyright infringement claims Plaintiffs must establish: (1) their ownership of valid copyrights; and (2) violation of at least one of Plaintiff's exclusive rights in those copyrights by Defendants. *See* 17 U.S.C. § 501; *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985). With respect to motion pictures and other audio-visual works, the Copyright Act specifies the copyright owner's exclusive right "to distribute copies . . . of the copyrighted work to the Public ," "to perform the copyrighted work publicly," and "to display the copyrighted work publicly." 17 U.S.C. § 106(3)–(5).

Through his pleadings and declarations, Plaintiff has established he is the owner of a valid copyrights and/or the relevant exclusive rights under United States copyright laws in Plaintiff's Works. Plaintiff has established that Defendants have infringed Plaintiffs' copyrights in their works by publicly performing, distributing and displaying Plaintiffs' Works, without authorization from Plaintiffs, in violation of 17 U.S.C. §§ 106(3)–(5) and 501. A fact defendants do not refute but <u>instead</u> argue that plaintiff has no notice of claim pursuant to the U.S Copyright Act's Section 411 (an erroneous argument under the Berne Convention) in their motions to dismiss. More precisely, defendants' arguments this far, as stated in their motions to dismiss and for sanctions, are not merit based regarding allegations of copyright infringement but are

9

procedural and jurisdictional in nature[1]. A preliminary injunction is an equitable remedy that looks past the surface and into the heart of the matter; it weighs equities to avert harm to the petitioner, at a preliminary point in the case. See in general, *Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010).

Defendants stream "Gemini Man," through various channels both domestic and international.[32] The law is clear that streaming copyrighted works to individual computers constitutes a public performance of those works. *See Am. Broad. Companies, Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2510, 189 L. Ed. 2d 476 (2014) ("[T]he Transmit Clause expressly provides that an entity may perform publicly 'whether the members of the public capable of receiving the performance . . . receive it in the same place or in separate places and at the same time or at different times.'"). Therefore, when it is unauthorized, courts have held that such streaming constitutes an infringement of the public performance right. *See WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 277–78 (2d Cir. 2012) (finding that streaming copyrighted television works over the Internet constituted unlicensed public performances); *Warner Bros. Entm't, Inc. v. WTV Sys.*, 824 F. Supp. 2d 1003, 1009–11 (C.D. Cal. 2011) (holding that unlicensed streaming of motion pictures to Internet users violated copyright holders' public performance rights); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 192 F. Supp. 2d 321, 332 (D.N.J. 2002) (finding a public performance under § 106(4) when "scenes from [a] copyrighted motion picture are transmitted to" Internet users' "individual computer screens"), *aff'd*, 342 F.3d 191 (3d Cir. 2003).

*NFL v. PrimeTime 24 Joint Venture*, 211 F.3d 10, 12 (2d Cir. 2000) (internal quotation marks omitted, emphasis added).

Further to this point, the court in *PrimeTime 24* explained that:

---

[1] Or personal attacks on plaintiff, who is also an attorney, as being engaged in <u>inherently incompetent pleading</u>, not worth the time of the day for the court (sic). This is despite the fact that plaintiff holds a PhD in Law (SJD), and three other law degrees. One Master from Temple, is from the number one ranked law school in Trial advocacy – Temple James Beasley School of Law. Ranked higher than Harvard in their Trial Advocacy program.

> "Under the Copyright Act, the owner of a copyright has the exclusive right publicly to perform and display the copyrighted material. The Act explains that the right to perform copyrighted material publicly includes the right 'to transmit or otherwise communicate a performance . . . of the work . . . to the public, by means of any device or process, whether the members of the public capable of receiving the performance . . . receive it in the same place or in separate places and at the same time or at different times.' Congress stated that '[e]ach and every method by which [ ] images or sounds comprising a performance or display are picked up and conveyed is a 'transmission,' and if the transmission reaches the public in [any] form, the case comes within the scope of [§ 106(4) or (5)].'"

*Id.* at 12 (internal citations omitted, alterations and ellipses in original).

Under this authority, it is clear that Defendants' streaming "Gemini Man," is a step in the process by which the infringement "wend[s] [its] way to a [public] audience." *Id.*; *see also Broad. Music, Inc. v. Hearst/ABC Viacom Entm't Servs.*, 746 F. Supp. 320, 328–29 (S.D.N.Y. 1990) (finding public performance when cable supplier transmitted signal to cable operator that then relayed signal to viewers); *Nat'l Ass'n of Broads. v. Copyright Royalty Tribunal*, 809 F.2d 172, 179 n.9 (2d Cir. 1986) (noting that cable retransmissions are recognized as public performances under § 106(4)); *Universal Studios v. Corley*, 273 F.3d 429, 456 (2d Cir. 2001) (finding that a hyperlink "has the functional capacity to bring the content of the linked web page to the user's computer screen . . . to take one almost instantaneously to the desired destination"). In the instant case, Defendants have licensed streaming rights of "Gemini Man" to various streaming outlets and countries. *Cf. Aereo*, 134 S. Ct. 2498, at 2507 (emphasizing overall functionality, rather than technical inner workings, when analyzing infringement of the public performance right).

Likewise, Defendants have violated Plaintiff's exclusive rights "to display his copyrighted work publicly" under § 106(5) by streaming their movie, both in homes and in cinemas – "Gemini Man," with no attribution or recognition of what they took from "The Return to Gibraltar." The work the film borrows heavily and is similar to. *Video Pipeline*, 192 F. Supp. 2d at 332 (citing 17 U.S.C. § 106(5)); *see also Getty Images (U.S.), Inc. v. Microsoft*

*Corp.*, No. 14CV7114 DLC, 2014 WL 6633032, at *3 (S.D.N.Y. Nov. 24, 2014) (displaying copyrighted images on website can constitute infringement of public display right).

In short, Plaintiff is likely to prevail on their claims that Defendants have, without authorization, publicly performed, displayed and distributed Plaintiff's Work – the copyrighted book, "The Return to Gibraltar," because the book predates the movie by nine years, 2011 vis-à-vis 2019, and the movie is substantially similar to the book.

        **2.**      **Plaintiff Is Likely To Prevail On Their Contributory Copyright Infringement Claim**

To prevail on his claim that Defendants contributorily infringe Plaintiff's Copyrights, Plaintiffs must show that Defendants "with knowledge of the infringing activity, induce, cause, or materially contribute to the infringing conduct of" other parties. *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 693, 706 (2d Cir. 1998); *see also Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).

The evidence shows Defendants' actual knowledge of the copyright infringement that is perpetrated because defendants received a notice of infringement in August of 2020. They did nothing to correct the substantive notice but instead submitted an action for declaratory judgement. Exhibit: 2. Defendants, as is now know, then abandoned their quest for declaratory judgment, a year in. Exhibit: 3. Defendants, from their conduct in this and prior litigation, have no intensions of addressing the fundamental issues of "similarity," unless plaintiff prevails in a lawsuit.

At the very least, these facts establish Defendants' "red flag" knowledge of copyright infringement. *See Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 31 (2d Cir. 2012) ("red flag" knowledge "turns on whether the provider was subjectively aware of facts that would have made the specific infringement 'objectively' obvious to a reasonable person"); *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1036, 1043 (9th Cir. 2013) (endorsing the Second Circuit's

interpretation of the "red flag" provision in *Viacom* and finding red flag knowledge where the infringed material at issue (i) included the twenty top-grossing movies then playing in U.S. theaters and (ii) was "sufficiently current and well-known that it would have been objectively obvious to a reasonable person that [it] . . . was both copyrighted and not licensed to random members of the public, and . . . therefore infringing").

Defendants materially contribute to other third-party infringement through the use of streaming licenses of "Gemini Man." Defendants aggregate and provide links to Infringing Copies through steaming licenses. This constitutes material contribution to the third-party infringement of Plaintiff's public performance rights. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) ("[A]ssist[ing] a worldwide audience of users to access infringing materials" constitutes material contribution.); *Gershwin Publ'g*, 443 F.2d at 1163 (Defendant's "pervasive participation in the formation and direction of" the platform that performed the infringing works "amply support the district court's finding that it 'caused this copyright infringement.'").

In sum, Plaintiff is likely to prevail on their claim that Defendants are contributorily infringing Plaintiff's Copyright as well.

### B. Plaintiff Has No Adequate Remedy At Law And Defendants' Public Performance, Distribution And Steaming of "Gemini Man," Irreparably Harms Plaintiffs

The Second Circuit in *Salinger v. Colting* recognized that while courts must not simply presume irreparable harm in copyright cases, "[t]his is not to say that most copyright plaintiffs who have shown a likelihood of success on the merits would not be irreparably harmed absent preliminary injunctive relief," and that "[a]s an empirical matter, that may well be the case, and the historical tendency to issue preliminary injunctions readily in copyright cases may reflect just that." 607 F.3d at 82. The *Salinger* court also noted that "[i]n the context of copyright

13

infringement cases, the harm to the plaintiff's property interest has often been characterized as irreparable in light of possible market confusion." *Id.* at 81 (citing *Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.*, 312 F.3d 94, 96–97 (2d Cir. 2002)). Furthermore, "courts have tended to issue injunctions in this context because 'to prove the loss of sales due to infringement is . . . notoriously difficult.'" *Salinger*, 607 F.3d at 81 (quoting *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971)). Consequently, irreparable harm has been readily found in copyright infringement cases. *See, e.g., WPIX*, 691 F.3d at 285–87 (2d Cir. 2012) (affirming finding of irreparable harm by Internet streaming of copyrighted television programming because (i) that streaming would substantially diminish the value of that programming—such as from advertising revenue and by disturbing licensing relationships and distribution windows, (ii) the plaintiffs' losses would have been difficult to measure and monetary damages insufficient to remedy the harms, and (iii) the defendant would have been unable to pay damages should the plaintiffs prevail).

In the instant case, irreparable harm is present for the same reasons recognized in *Salinger* and similar cases. Specifically, Defendants' infringement (i) deprives Plaintiff of his "exclusive right to decide when, where, to whom, and for how much they will authorize transmission of their Copyrighted Works to the public," *Warner Bros. Entm't*, 824 F. Supp. 2d at 1012; (ii) deprives Plaintiff of revenue; jeopardizes the existence of Plaintiff's creative licenses and derivative rights based on "The Return to Gibraltar[2]."

In sum, the harm to Plaintiff's goodwill or loss of control over reputation is irreparable, and such irreparable injury weighs in favor of granting a preliminary injunction. *See N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 343 (S.D.N.Y. 2010)

---

[2] Including the T.V. series in development and inspired by "The Return to Gibraltar." D:SI. (Declassified: Special Investigation).

## C. The Balance of Hardships and Public Interest Favor an Injunction

As explained above, the harm to Plaintiff is irreparable. In contrast, any potential harm to Defendants is purely monetary. Moreover, Defendants have no legitimate interest in distributing Infringing Copies, and, given "the probable outcome of this action, this is a loss which [defendants] may justifiably be called upon to bear." *Corning Glass Works v. Jeannette Glass Co.*, 308 F. Supp. 1321, 1328 (S.D.N.Y. 1970), *aff'd*, 432 F.2d 784 (2d Cir. 1970).

Furthermore, the public interest undoubtedly favors an injunction and the setting of a constructive trust because the public does not approve of more powerful entities, like Skydance and Fosun Pictures Inc, in Solomon Linda's case – Disney, benefiting from the intellectual property of up and coming or less powerful people. The Disney case involving the Lion King song stolen from a South African artist, Linda Solomon, in 1939, and which finally settled in 2020, 81 years later after it was written, is informative for the court[3]. Put plainly, the public wants to see artists compensated for their work regardless of their ethnic origins and not reaped off by big Hollywood studios.

The intention of the Copyright Act has always been to encourage original work by artists and any injunction is in line with that primary objective.

The "public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming." *WPIX*, 691 F.3d 275 at 287. Inadequate protections for copyright owners "can threaten the very store of knowledge to be accessed; encouraging the production of creative work thus ultimately serves the public's interest in promoting the accessibility of such works." *Id.* (citing *Metro-Goldwyn-*

---

[3] Zee Ngema, 'How the Creator of 'The Lion Sleeps Tonight' Finally Got His Due In 'Black Is King.'" OkayAfrica.com. https://www.okayafrica.com/solomon-linda-original-creator-of-the-lion-sleeps-tonight-credited-in-black-is-king-/ Retrieved October 30th, 2023. Exhibit: 7 [ as insert].

*Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 961 (2005)). "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983). Additionally, the "public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon*, 704 F. Supp. 2d at 344.

## VI. THE PRELIMINARY INJUNCTION ORDER SHOULD DIRECT DEFENDANTS TO TRANSFER MONEY INTO A CONSTRUCTIVE TRUST.

This Court's power to issue such relief is supported by numerous statutes and authorities, including: (i) 17 U.S.C. § 502, which allows a court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright;" (ii) 15 U.S.C § 1116(a), which provides for an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 43 [15 U.S.C. § 1125];" (iii) Federal Rule of Civil Procedure 65(d)(2), which imbues courts with the power to issue injunctions that bind parties, parties' officers, agents, servants, employees, and attorneys and any "other persons who are in active concert or participation with" any such individuals or entities; (iv) the Court's "inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief," which encompasses injunctions as broad as restraining defendants' assets to preserve them for disgorgement of profits and equitable accounting, *Levi Strauss & Co. v. Sunrise Int'l*

16

*Trading, Inc.*, 51 F.3d 982, 986–87 (11th Cir. 1995); *see also Datatech Enters. LLC v. FF Magnat Ltd.*, No. C 12-04500, 2012 U.S. Dist. LEXIS 131711, at *11-12 (N.D. Cal. Sept. 14, 2002); *Reebok Int'l Ltd. v. Marnatech Enter.*, 970 F.2d 552, 559 (9th Cir. 1992); and/or (v) the Court's power pursuant to 28 U.S.C. § 1651 (the All Writs Act) to issue all writs necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principles of law.

## VII. PLAINTIFF IS ENTITLED TO AN ORDER PREVENTING THE FRAUDULENT TRANSFER OF ASSETS

Plaintiff ultimately will be entitled to a disgorgement of Defendants' profits attributable to copyright infringement[4]. On these bases, courts have repeatedly held that district courts possess the inherent equitable authority to restrain a defendant's assets so that these equitable remedies are not later frustrated by dissipation of assets. *See, e.g.*, *Datatech Enters.*, 2012 U.S. Dist. LEXIS 131711, at *11–12; *Microsoft Corp. v. Jun Yan*, No. 10-cv-00162, 2010 U.S. Dist. LEXIS 14933, at *7–8 (D. Conn. Feb. 18, 2010); *Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 130 (2d Cir. 2014); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) (unpublished); *Levi Strauss & Co. v. Sunrise Int'l Trading*, *Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521, 1526 (S.D. Cal. 1989), *aff'd* 970 F.2d 552 (9th Cir. 1992).

To obtain an order restraining a defendant's assets, a plaintiff must show "a likelihood of dissipation of the claimed assets, or other inability to recover money damages, if relief is not granted." *Datatech Enters.*, 2012 U.S. Dist. LEXIS 131711, at *12 (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009)). Defendants have had financial issues in the past, and have been bailed out by partnering with Fosun Pictures Inc, a Chinese company, in order

---

[4] 17 U.S.C. § 504(b).

to be able to raise the necessary money to produce their movies. A constructive trust insulates against bankruptcy proceedings or other illegal ways for defendants to render plaintiff's success in this copyright lawsuit a pyrrhic victory.

## VIII. PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY

Expedited discovery may be granted when the requesting party demonstrates: (i) irreparable injury; (ii) some likelihood of success on the merits; (iii) some connection between expedited discovery and the avoidance of irreparable injury; and (iv) some evidence that the injury that will result without expedited discovery looms greater than the injury defendants will suffer if expedited relief is granted. *Twentieth Century Fox Film Corp. v. Mow Trading Corp.*, 749 F. Supp. 473, 475 (S.D.N.Y. 1990).

While Plaintiff has learned some aspects of Defendants' copyright infringement, Plaintiff does not yet know with certainty the full scope of the accounting regarding "Gemini Man," and the role of Paramount Pictures.[5]

The discovery requested on an expedited basis in Plaintiff's Proposed Preliminary Injunction Order has been precisely defined and carefully limited to include only what is essential to prevent further irreparable harm. Plaintiff is unaware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. More importantly, Defendants have shown no remorse or interest in private negotiations to resolve this matter amicably. Exhibits: 4-6. Accordingly, the request for expedited discovery should be granted because in close to three years since the notice of infringement was served on defendants, this matter has not moved beyond the complaint stage or theatrics by defendants, discovery will allow for clarification of crucial facts in this dispute regarding accounting by

---

[5] Plaintiff believes that "Paramount Pictures," now outrightly owns "Gemini Man," but is uncertain in this. Furthermore, why Paramount Pictures, the Distributor, never sought the declaratory injunction action in *Skydance I,* is in itself a million-dollar question?

defendants.

## **CONCLUSION**

The Court should grant the relief requested in the proposed preliminary injunction order, including requiring that: (i) defendants deposit a sum certain in a constructive trust until this matter is resolved on its merits (ii) defendants cease all streaming and sales of "Gemini Man," on all mediums including DVD and Blue Ray.

Dated: October 30, 2023

Respectfully submitted,

By: */s/ Kissinger N. Sibanda*

The Law Offices of Kissinger N. Sibanda
Attorney for plaintiff
*Pro se.*